IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | <u>SUPERSEDING INDICTMENT</u> |
| | ) | |
| Plaintiff | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| DAMONE TYSON, | ) | CASE NO. <u>1:15CR139</u> |
| | ) | Title 18, United States Code, |
| Defendant. | ) | Sections 1349, 1344 and 2 |

The Grand Jury charges:

<u>**COUNT 1**</u>
(Conspiracy to Commit Bank Fraud, Title 18, United States Code, Section 1349)

<u>**General Allegations**</u>

At all times material herein:

1.       Defendant DAMONE TYSON served as the president and agent for a consulting company known as Athletes & Entertainers, Inc. ("AE") located in Cleveland, Ohio.  The company represented that it provided financial, personal and business advice and counsel to professional athletes and entertainers.

2.     On or about February 13, 2007, T.F., a person known to the Grand Jury but not charged herein, was the straw buyer for a residential real estate property located at 3400 East Galloway Drive, Richfield, Ohio 44286 (hereinafter referred to as the "Richfield property").

3.     Independent National Mortgage Corporation ("IndyMac Bank") was a federally chartered savings bank headquartered in Pasadena, California, whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC") as defined by Title 18, United States Code, Section 20.

4.     T.F. served as a straw buyer for the Richfield property for which she paid $1,189,000. She made the purchase at the direction of Defendant TYSON, who used the property as his personal residence. T.F. financed the transaction with a first mortgage loan in the amount of $951,200 through IndyMac Bank, along with a home equity line of credit ("HELOC") loan in the amount of $178,350 through IndyMac Bank.

5.     A "straw buyer" was an individual who signed mortgage loan documents so as to conceal from the lender the fact that someone else was going to be the de facto owner of the property. A straw buyer signed the mortgage application, but had no intention of making mortgage payments, living in the mortgaged property as her residence, or keeping the property as an investment.

6.     D.M., an individual known to the Grand Jury but not charged herein, was a licensed loan officer working at Triton Financial Group, LLC in Warrensville Heights, Ohio. Triton Financial Group, LLC, was a mortgage broker who originated loans on behalf of IndyMac Bank, whereby Triton Financial Group, LLC, collected financial records for each respective borrower and submitted the documents to IndyMac Bank who then completed the underwriting approval for the loans.

### The Conspiracy

7.      From in or around January 2007, through on or about February 13, 2007, the exact dates unknown to the Grand Jury, in the Northern District of Ohio, Eastern Division, Defendant DAMONE TYSON, along with T.F. and others known and unknown to the Grand Jury, did knowingly and voluntarily combine, conspire, confederate and agree together and with each other to violate the laws of the United States, that is, to knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution and to obtain money and property under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations and promises in violation of Title 18, United States Code, Section 1344.

### Object of the Conspiracy

8.      The object of the conspiracy was to enrich Defendant DAMONE TYSON by defrauding IndyMac Bank through the submission of false and fraudulent mortgage loan applications in the name of T.F., thus inducing IndyMac Bank to finance the purchase of the Richfield property.

### Manner and Means

Among the manner and means by which Defendant DAMONE TYSON and T.F. and others, carried out the conspiracy were the following:

9.      In or around early 2007, TYSON expressed an interest to the sellers of the Richfield property that he wanted to purchase the property for his personal residence.

10.     On or about January 10, 2007, T.F., at the direction of TYSON, submitted and signed an initial Uniform Residential Loan Application Form 1003 ("1003") loan application, in the amount of $960,000, and a HELOC application in the amount of $240,000 to D.M. at Triton

Financial Group, LLC. On both applications, T.F. and TYSON knew T.F. made the following fraudulent representations: (1) T.F. had a base employment income initially of $55,000 per month and, then, $35,000 per month, (2) T.F. had a bank account with approximately $300,000 in the account, (3) T.F. was the chief executive officer ("CEO") of AE for the past 10 years, (4) T.F. intended to occupy the property as her primary residence, and (5) none of T.F.'s down payment was borrowed.

11.     T.F.'s loan application included multiple fraudulent supporting documents, including (1) a false tax preparer's letter from Gold Coast Financial & Tax Services, and (2) an income statement letter from T.F. which certified her income as $35,000 per month.

12.     On or about February 13, 2007, T.F., at the direction of TYSON, submitted a final 1003 for the Richfield property in the amount of $951,200, and a HELOC application in the amount of $178,350 to D.M. at Triton Financial Group, LLC. On both applications, T.F. and TYSON knew T.F. made the following fraudulent representations: (1) T.F. had a base employment income of $35,416.67 per month, (2) T.F. was the CEO of AE for the past 10 years, (3) T.F. intended to occupy the property as her primary residence, and (4) none of T.F.'s down payment was borrowed.

13.     On or about February 13, 2007, TYSON and T.F. executed a $30,000 promissory note with J.D., a person known to the Grand Jury but not charged herein, which represented a portion of the down payment on the Richfield property. TYSON provided J.D. with wiring instructions for the title company handling the closing of the Richfield property in order for J.D. to wire in the $30,000 down payment.

4

14.     On or about February 13, 2007, T.F. executed mortgage documents with IndyMac Bank, which listed her as the borrower on the Richfield property. TYSON signed the first mortgage as a witness to T.F.'s execution of the document.

15.     On or about February 13, 2007, TYSON and T.F. caused the sale and closing of the Richfield property. T.F. executed a HUD-1 Settlement Statement, at the direction of TYSON, which listed a first mortgage loan from IndyMac Bank in the amount of $951,200 and a HELOC loan in the amount of $178,254 with IndyMac Bank.

16.     Both of the IndyMac Bank loans obtained by T.F. at TYSON's direction went into foreclosure, resulting in a total loss to IndyMac Bank of approximately $631,854.

### Acts in Furtherance of the Conspiracy

17.     In furtherance of the conspiracy and to effect its unlawful objects, TYSON, T.F. and others, committed and caused to be committed the following acts, among others, in the Northern District of Ohio, Eastern Division, and elsewhere:

A.     On or about January 10, 2007, Defendant TYSON and T.F. caused an initial loan application in the amount of $960,000 to be submitted to Triton Financial Group, LLC on behalf of IndyMac Bank.

B.     On or about February 13, 2007, Defendant TYSON and T.F. caused a final loan application in the amount of $951,200 to be submitted to Triton Financial Group, LLC on behalf of IndyMac Bank.

C.     On or about February 13, 2007, Defendant TYSON and T.F. caused a final HELOC application in the amount of $178,350 to be submitted to Triton Financial Group, LLC on behalf of IndyMac Bank.

D.     On or about February 13, 2007, Defendant TYSON and T.F. executed a $30,000 promissory note with J.D. for a portion of the down payment on the Richfield property.

E.     On or about February 13, 2007, T.F. executed mortgage loan documents with IndyMac Bank, which listed T.F. as the borrower and Defendant TYSON as a witness.

All in violation of Title 18, United States Code, Section 1349.

The Grand Jury further charges:

**Count 2**
(Bank Fraud, Title 18, United States Code, Sections 1344 and 2)

18.     The factual allegations of paragraphs 1 through 6, and 9 through 17 of Count 1 of this indictment are re-alleged and incorporated by reference herein.

19.     From in or around January 2007, through on or about February 13, 2007, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant DAMONE TYSON, along with T.F., and others, knowingly executed and attempted to execute a scheme and artifice to defraud IndyMac Bank, an FDIC insured financial institution, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of IndyMac Bank, by means of false and fraudulent pretenses, representations, and promises, in connection with a first mortgage loan in the amount of approximately $951,200, and HELOC loan in the amount of approximately $178,350 in the name of T.F. on property located at 3400 East Galloway Drive, Richfield, Ohio 44286.

All in violation of Title 18, United States Code, Sections 1344 and 2.

The Grand Jury further charges:

**Counts 3 through 12**
(Bank Fraud, Title 18, United States Code, Sections 1344 and 2)

**General Allegations**

At all times material herein:

20.     The factual allegations of paragraph 1 of Count 1 of this Superseding indictment are re-alleged and incorporated by reference herein.

21.     Defendant DAMONE TYSON ("TYSON") served as a board member for a company known as Most Valuable Purpose, Inc. ("MVP"), which was located in Cleveland, Ohio. The company represented that it worked with youth in the community and hosted musical concerts.

22.     C.G., an individual known to the Grand Jury but not charged herein, held himself out as the Chief Executive Officer of MVP.

23.     T.F., L.S., P.N., and S.H., individuals known to the Grand Jury but not charged herein, served as "straw buyers" for several vehicles at the request of TYSON for his company, Athletes & Entertainers, Inc. ("AE"), and MVP.

24.     A "straw buyer" was an individual who signed loan documents so as to conceal from the lender the fact that someone else was going to be the *de facto* owner of the vehicle. A straw buyer signed the vehicle loan application, but had no intention of making the monthly loan payment on the vehicle, and/or, in most instances, driving the vehicle.

25.     T.F. served as the straw buyer for a 2006 Infiniti QX56 with a vehicle identification number ("VIN") ending in 1683 and a 2007 Infiniti G35 with a VIN ending in 4079. She made the purchases at the direction of Defendant TYSON on behalf of TYSON and AE through Infiniti of Bedford.

7

26.     T.F. financed the purchase of the QX56 with a loan in the amount of approximately $59,334 through Fifth Third Bank ("Fifth Third").  T.F. financed the purchase of the G35 with a loan in the amount of approximately $39,620 through Infiniti Financial Services.

27.     L.S. served as the straw buyer of a 2006 Land Rover with a VIN ending in 5416; a 2009 Toyota Camry with a VIN ending in 9769; 2009 Toyota Camry Hybrid with a VIN ending in 5016; a 2009 Toyota Camry with a VIN ending in 5945; a 2008 Toyota Sequoia with a VIN ending in 0257; a 2009 Toyota Camry with a VIN ending in 7500; a 2005 Lexus GX470 with a VIN ending in 1868; and, a 2006 Lexus GS 300 with a VIN ending in 5928.  She made all of the purchases at the direction of Defendant TYSON on behalf of TYSON and AE through Montrose Toyota.

28.     L.S. financed the purchase of the Land Rover with a loan in the amount of approximately $56,471, and one of the 2009 Toyota Camry Hybrids with a loan in the amount of approximately $29,745 through Fifth Third.  L.S. financed the purchase of two of the 2009 Toyota Camrys, one with a loan in the amount of approximately $35,678 and one with a loan in the amount of approximately $35,403; and, the Toyota Sequoia with a loan in the amount of approximately $58,763 through Toyota Motor Credit/Financial Service.  L.S. financed the purchase of one of the Toyota Camry Hybrids with a loan in the amount of approximately $35,142 through Wachovia Dealer Services, Inc., a division of Wachovia National Bank ("Wachovia").  L.S. financed the purchase of the Lexus GX470 with a loan in the amount of approximately $30,181 through Morgan Bank, a division of Lorain National Bank ("Morgan Bank").  L.S. financed the purchase of the Lexus GS300 with a loan in the amount of approximately $32,500 through Westfield Bank.

29.     P.N. served as the straw buyer of a 2013 Hyundai Sonata with a VIN ending in 1575; a 2013 Hyundai Elantra with a VIN ending in 0475; 2014 Mitsubishi Outlander with a VIN ending in 3060; a 2013 Hyundai Sonata with a VIN ending in 7523; another 2013 Hyundai Sonata with a VIN ending in 8131; a 2013 Hyndai Santa Fe with a VIN ending in 9694; and, a 2013 Hyundai Santa Fe with a VIN ending in 9704. She made all of the purchases at the direction of Defendant TYSON on behalf of TYSON and MVP through Rick Case dealerships.

30.     P.N. financed the purchase of the Sonata with the VIN ending in 1575 with a loan in the amount of approximately $28,800 through Hyundai Lease Titling Trust. P.N. financed the purchase of the Elantra with a loan in the amount of approximately $23,566 through Emerald Group Credit Union. P.N. financed the purchase of the Outlander with a loan in the amount of approximately $33,975 through Mitsubishi Motors Lease Service, Inc. P.N. financed the purchase of the Sonata with the VIN ending in 7523 with a loan in the amount of approximately $30,088 through First Merit Bank ("First Merit"). P.N. financed the purchase of the Sonata with the VIN ending in 8131 with a loan in the amount of approximately $30,088 through JP Morgan Chase Bank ("Chase"). P.N. financed the purchase of the Santa Fe with the VIN ending in 9694 with a loan in the amount of approximately $34,816 through Huntington National Bank ("Huntington"). P.N. financed the purchase of the Santa Fe with the VIN ending in 9704 with a loan in the amount of approximately $37,450 through Ally Financial.

31.     S.H. served as the straw buyer of three 2014 Honda Accords with VINs ending in 4130, 9028, and 3094; and, a 2014 Honda Pilot with a VIN ending in 4245. She made all of the purchases at the direction of Defendant TYSON on behalf of TYSON and MVP through Ganley Honda.

32.     S.H. financed the purchase of the Accord with the VIN ending in 4130 with a loan in the amount of approximately $27,775 through Chase.  S.H. financed the purchase of the Accord with the VIN ending in 9028 with a loan in the amount of approximately $27,775 through Wells Fargo.  S.H. financed the purchase of the Accord with the VIN ending in 3094 with a loan in the amount of approximately $26,998 through U.S. Bank.  S.H. financed the purchase of the Pilot with a loan in the amount of approximately $40,545 through American Honda Finance.

33.     On or about December 11, 2006, T.F., at the direction of TYSON and in his presence, submitted and signed an auto loan application at Infiniti of Bedford.  On the application, T.F. and TYSON knew T.F. made the following fraudulent representations:  (1) T.F. had an annual employment income of $180,000, and (2) T.F. was the president of AE for the past two years and one month.

34.     On or about October 23, 2008, through on or about May 5, 2009, L.S., at the direction of TYSON and in his presence, submitted and signed eight auto loan applications at Westside Auto Group and Montrose Toyota.  On all of the applications, L.S. and TYSON knew L.S. made the following fraudulent representations:  (1) AE had a monthly income of $750,000, (2) L.S. had an employment income of $15,000/month, and (3) L.S. was the vice-president of AE for at least three years and for as long as eight years and six months.

35.     On or about July 11, 2013, through on or about July 29, 2013, P.N., at the direction of TYSON and in his presence and, initially, in C.G.'s presence, submitted and signed seven auto loan applications at Rick Case.  On all of the applications, P.N. and TYSON knew P.N. made the following fraudulent representations:  (1) P.N. had an employment income of $4,500/month, and (2) P.N. was a vice-president at MVP for at least the past two years.

10

36.     On or about February 8, 2014, through on or about February 10, 2014, S.H., at the direction of TYSON and in his presence and in C.G.'s presence, submitted and signed four auto loan applications at Ganley Honda.  On all of the applications, S.H. and TYSON knew S.H. made the following fraudulent representations:  (1) S.H. had an employment income of at least $6,000/month, and (2) S.H. was a vice-president at MVP for the past three years.

37.     Fifth Third, Wachovia, Morgan Bank, Westfield Bank, First Merit, Chase, Huntington, Wells Fargo, and U.S. Bank, were a federal institutions, whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC") as defined by Title 18, United States Code, Section 20.

### Statutory Violation

38.     From on or about December 11, 2006, through on or about February 10, 2014, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant DAMONE TYSON, along with L.S., P.N., S.H., and others, knowingly executed and attempted to execute a scheme and artifice to defraud Fifth Third, Wachovia, Morgan Bank, Westfield Bank, First Merit, Chase, Huntington, Wells Fargo, and U.S. Bank, all FDIC insured financial institutions, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of Fifth Third, Wachovia, Morgan Bank, Westfield Bank, First Merit, Chase, Huntington, Wells Fargo, and U.S. Bank, by means of false and fraudulent pretenses, representations, and promises, as detailed above and summarized in the table below, for each count constituted a separate count:

| Count | Appr. Date | Straw Buyer | Vehicle | Last 4 of VIN | Bank | Appr. Loan Amount |
|---|---|---|---|---|---|---|
| 3 | 10/23/2008 | L.S. | 2006 Land Rover | 5416 | Fifth Third | $56,471 |
| 4 | 4/16/2009 | L.S. | 2009 Camry Hybrid | 5016 | Wachovia | $35,142 |
| 5 | 4/30/2009 | L.S. | 2009 Camry Hybrid | 7500 | Fifth Third | $29,745 |
| 6 | 5/5/2009 | L.S. | 2006 Lexus GS300 | 5928 | Westfield | $32,500 |
| 7 | 7/19/2013 | P.N. | 2013 Sonata | 7523 | First Merit | $30,088 |
| 8 | 7/19/2013 | P.N. | 2013 Sonata | 8131 | Chase | $30,088 |
| 9 | 7/29/2013 | P.N. | 2013 Santa Fe | 9694 | Huntington | $34,816 |
| 10 | 2/8/2014 | S.H. | 2014 Accord | 4130 | Chase | $27,775 |
| 11 | 2/9/2014 | S.H. | 2014 Accord | 9028 | Wells Fargo | $27,775 |
| 12 | 2/10/2014 | S.H. | 2014 Accord | 3094 | U.S. Bank | $26,998 |

All in violation of Title 18, United States Code, Sections 1344 and 2.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.